# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|  |  |  |
|---|---|---|
| **DOUGLAS WILDER,** | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | Civil Action No.: 1:04cv00141 |
| **UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

Douglas Wilder, ("Wilder"), proceeding *pro se*, brought this suit against the defendant, the United States of America, ("the Government"), under the Federal Tort Claims Act, ("the Act"), 28 U.S.C. § 2671 *et seq.*, seeking damages for two alleged sexual assaults by an employee of the James H. Quillen Veterans Administration Medical Center, ("VAMC"), in Mountain Home, Tennessee. The matter is currently before this court on the Government's Motion For Summary Judgment, (Docket Item No. 16), ("the Motion"), which was filed on September 28, 2005. This court has exclusive jurisdiction over the matter based upon 28 U.S.C. § 1346(b)(1). Furthermore, pursuant to 28 U.S.C. § 636(b)(1)(B), the Motion is before the undersigned magistrate judge by referral. As directed by the order of referral, the undersigned now submits the following report and recommendation.

-1-

## 1. Facts

Wilder filed an administrative tort claim with the Department of Veterans Affairs, ("VA"), in Washington, D.C., and claimed that he suffered a back injury while being treated at VAMC. In a Standard Form 95,[1] ("complaint forms"), dated February 14, 1992, Wilder alleged that on September 12, 1990, while undergoing a barium enema procedure, he began to experience pain and unpleasant feelings. (Docket Item No. 17, Attachment 4, Exh. 1, ("Back Injury Claim").) Wilder alleged that, after he complained of pain to those conducting the procedure, he was "flip[p]ed upon [his] left side and pain shot down the back of both legs[. He] again complained of pain and numbness but [he said that he was] ignored and was told it would be alright." (Back Injury Claim.) Wilder noted that he received "nerve damage in both legs caused by [a] bulging disc that cut nerves during the examination at [the] VA facility." (Back Injury Claim.) Wilder also noted that, since this procedure, he had endured two unsuccessful back surgeries. (Back Injury Claim.)

In the complaint form, Wilder identified Stanley Rawles, ("Rawles"), an employee at VAMC, as the person responsible for the alleged injuries. (Back Injury Claim.) As a result, Wilder sought $5,000,000.00 in damages. (Back Injury Claim.) However, on August 13, 1992, Wilder was given notice that his claim was denied, and was later notified of the final decision to deny the claim on January 4, 1993. (Docket Item No. 17, Attachment 3, ("Barnett Declaration"), at 1-2.)

---

[1] Standard Form 95 is a complaint form used to report any claim for damage, injury or death that may arise during treatment at a Veterans Affairs facility.

Shortly after Wilder received notice that his back injury claim was denied, he contacted VAMC patient representative, Denise Webb, ("Webb"), and alleged that he was sexually assaulted by an employee at VAMC. Webb, a patient advocate at VAMC since 1989, noted that Wilder's first allegation of sexual harassment occurred on October 9, 1992. Wilder reported to Webb that he had been "sexually harassed" while having an x-ray procedure conducted. (Docket Item No. 17, Attachment 6, ("Patient Representative's Records").) Wilder claimed that Rawles sexually assaulted him during two medical procedures. (Patient Representative's Records.) He stated that Rawles touched his genitalia on two occasions and that Rawles told him that the doctor instructed him to make sure everything was alright. (Patient Representative's Records.) Wilder also alleged that when he was exiting the radiology department, Rawles commented that a barium enema was a "'sweet feeling sensation.'" (Patient Representative's Records.)

In addition, Webb noted that Wilder made further reports on October 20, 21 and 22, 1992. (Patient Representative's Records.) On October 20, 1992, Wilder asked Webb the name of an attorney who had previously represented a female VAMC employee who received compensation as a result of a lawsuit. (Patient Representative's Records.) Wilder stated that it would be "discrimination" if he did not also receive monetary relief for his alleged injuries. (Patient Representative's Records.) Wilder threatened to contact the media if action was not taken regarding his complaint. (Patient Representative's Records.) He also requested that Webb forward him a complaint form, which Webb did. (Patient Representative's Records.)

Then, on October 21, 1992, Webb contacted Wilder and asked that he be more

specific regarding the allegations. (Patient Representative's Records.) Wilder stated that during a CT scan he specifically remembered Rawles telling him that the physician had sent him into the room to "'check his penis for blockage.'" (Patient Representative's Records.) Wilder also alleged that Rawles touched him, but that he pushed Rawles away. (Patient Representative's Records.) Wilder explained that this type of behavior by Rawles had occurred on two occasions prior to the CT scan. (Patient Representative's Records.) However, as noted by Webb, Wilder was unable to state when the alleged actions occurred, or what type of procedures were being conducted when the alleged actions occurred. (Patient Representative's Records.) Wilder further noted that the comment regarding the feeling of a barium enema was made in April 1992. (Patient Representative's Records.)

Moreover, on October 22, 1992, Webb again contacted Wilder. (Patient Representative's Records.) Webb informed Wilder that, after a review of the fact finding conducted by VAMC, the director at VAMC had concluded that there was no basis for Wilder's claims. (Patient Representative's Records.) Wilder then stated that he planned to hire an attorney and notify the media. (Patient Representative's Records.)

More than 10 years later, on March 31, 2003, Wilder filed two complaint forms with the VA, (Docket Item No. 1, Exh. 3, ("VA letter"), at 1), and alleged that he was sexually assaulted and harassed by an x-ray technician at VAMC. The first complaint form indicated that the date of the alleged incident was in August 1990. (Docket Item No. 1, Exh. 4, ("Sexual Assault Claim #1").) However, the form failed to indicate the precise date and time of the alleged incident, as well as the individual who allegedly

-4-

committed the acts. (Sexual Assault Claim #1.) In describing the alleged assault, Wilder claimed that, while he awaited a colonoscopy procedure to be performed, he was sexually assaulted by a male x-ray technician after being sedated. (Sexual Assault Claim #1.) The complaint form, which was dated November 5, 1990,[2] stated that, as a result of the alleged assault, Wilder experienced nervousness and was unable to sleep. (Sexual Assault Claim #1.) Thus, Wilder sought $1,500,000.00 in damages.

In a separate complaint form, dated February 8, 1993, Wilder claimed that he was assaulted for a second time by the same x-ray technician at VAMC. (Docket Item No. 1, Exh. 4, ("Sexual Assault Claim #2").) Wilder alleged that the x-ray technician "placed his hand on [his] groin area" and stated that a doctor had instructed him to "check [Wilder] out." (Sexual Assault Claim #2.) Wilder noted that he was at VAMC to receive treatment for a back condition, not a groin condition. (Sexual Assault Claim #2.) He explained that the alleged incident caused undue harassment, mental anguish, stress and a dread to go to VAMC for treatment because of great embarrassment. (Sexual Assault Claim #2.) Wilder also claimed that he reported the incident to the proper authorities at VAMC. (Sexual Assault Claim #2.) However, on the complaint form, Wilder failed to identify the individual who committed the alleged acts and failed to indicate the date and time of the alleged incident. (Sexual Assault Claim #2.) Wilder sought $1,000,000.00 in damages. (Sexual Assault Claim #2.)

By letter dated June 18, 2004, the VA informed Wilder that, after complete

---

[2] The complaint form was allegedly completed by Wilder on this date, but there is no record it was ever filed until 2003.

review of his administrative tort claims and careful consideration of all available evidence, including medical records and opinions of medical experts, his claims were denied. (VA letter.) The review "did not reveal the existence of a negligent or wrongful act on the part of an employee of the [VA] acting within the scope of his or her employment." (VA letter.) Furthermore, the letter explained that "[s]exual harassment and sexual molestation are not within the scope of employment of medical care providers and therefore are not actionable under the Federal Tort Claims Act." (VA letter.) Lastly, the VA noted that because Wilder's claims regarding the alleged sexual assaults were not filed with the VA until March 31, 2003, his claims were barred by the running of the applicable two-year statute of limitations.[3] (VA letter.) The VA informed Wilder that, in order to be considered timely, a tort claim must be filed within two years of the accrual of the injuries. (VA letter.)

As a result, on December 10, 2004, Wilder filed a complaint with this court, in accordance with the provisions of the Federal Tort Claims Act. (Docket Item No. 1.) Wilder attached a copy of Sexual Assault Claim #1 and Sexual Assault Claim #2 to his complaint. (Docket Item No. 1, Exh. No. 4.)

Wilder alleged that following Sexual Assault Claim #1, he saw Jim Jones, ("Jones"), a patient representative at VAMC, who instructed him to fill out a complaint form to address his claim. (Docket Item No. 1) On deposition, Wilder also

---

[3] An examination of the VA's denial letter indicates that the letter is in regards to an "Administrative Tort Claim - Request for Reconsideration." (VA letter.) However, there is nothing within the record to show that the VA had previously ruled on this matter. There is evidence that, after Wilder made complaints of sexual assault and/or harassment in October 1992, the VAMC director concluded that there was no basis for Wilder's claims. (Docket Item No. 17, Attachment 6, ("Patient Representative's Records").)

-6-

claimed that Jones assured him that he would forward the claim to the VA in Washington, D.C. (Deposition of Douglas Wilder, Docket Item No. 17, Attachment 16, ("Wilder Deposition"), at 15-16.) Wilder contended that Jones gave him a copy of the complaint form, but that Jones kept the original, signed form. (Wilder Deposition at 16.) In regards to Sexual Assault Claim #2, Wilder claimed that Webb aided him in completing the complaint form, and that she stated she would make sure that the form was forwarded to the proper court. (Docket Item No. 1.)

Furthermore, on deposition, Wilder stated that the alleged sexual assault described in Sexual Assault Claim #2, dated February 8, 1993, and the alleged back injury described in the Back Injury Claim dated February 14, 1992, occurred on the same date. (Wilder Deposition at 57-58.)

Bruce Barnett, ("Barnett"), a staff attorney for the VA's Nashville office, was assigned to investigate Wilder's tort claims. (Barnett Declaration at 1.) Barnett stated that Sexual Assault Claim #1, which was dated November 5, 1990, was never presented to his office and that he was unable to find any record of that particular claim ever being presented to VAMC, the VA Regional Office in Roanoke or any other VA facility. (Barnett Declaration at 1.)

## II. Analysis

The standard of review for a motion for summary judgment is well-settled. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all his evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. *See Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *See Anderson*, 477 U.S. at 248.

The Federal Tort Claims Act waives sovereign immunity as to the United States, and a lawsuit against the United States shall be the exclusive remedy for those with claims against the United States for "money damages . . . for injury . . . or personal injury or death caused by the negligent or wrongful act or omission of any

-8-

employee of the Government while acting within the scope of his . . . employment."
28 U.S.C.A. § 1346(b)(1) (West 2003 & Supp. 2006). *See also* 38 U.S.C.A. § 7316(a)
(West 2002 & Supp. 2006) (the remedy for malpractice and negligence suits against
the United States is provided by 28 U.S.C. §§ 1346(b) and 2672). Furthermore, 28
U.S.C. § 1346(b)(1) states that "the law of the place where the act or omission
occurred" will govern. Thus, under these circumstances, the United States is
equivalent to a private citizen who is subject to the laws of the place where the injury
occurred. *See* 28 U.S.C.A. § 1346(b)(1) (West 2003 & Supp. 2006). In this case,
because the alleged sexual assault occurred in Tennessee, the substantive law of
Tennessee shall be applied. *See Matthews v. U. S.*, 825 F.2d 35, 36 (4th Cir. 1987);
*see also Piggott v. U. S.*, 480 F.2d 138, 140 (4th Cir. 1973).

Pursuant to 28 U.S.C. § 2401(b), a tort claim against the United States

> shall be forever barred unless it is presented in writing to the appropriate
> Federal agency within two years after such claim accrues or unless action
> is begun within six months after the date of mailing . . . of notice of final
> denial of the claim by the agency to which it was presented.

Furthermore, "the requirement of filing an administrative claim is jurisdictional and
may not be waived." *Henderson v. U. S.*, 785 F.2d 121, 123 (4th Cir. 1986). The
Fourth Circuit has stated that a claim is properly presented to a federal agency when
the administrative claim provides (1) written notice sufficient to cause the agency to
investigate the claim; and (2) a sum-certain value on the claim. *See Ahmed v. U. S.*,
30 F.3d 514, 516-17 (4th Cir. 1994); *see also Sellers v. U. S.*, 870 F.2d 1098, 1101
(6th Cir. 1989) (citing *Douglas v. U. S.*, 658 F.2d 445, 447 (6th Cir. 1981)); *Adams*

-9-

*v. U. S.*, 615 F.2d 284, 289 (5th Cir. 1980).

The Supreme Court has determined that, under 28 U.S.C. § 2401(b), a cause of action accrues when a plaintiff knows of both the existence of his injury and the cause of the injury. *See Gilbert v. U. S.*, 720 F.2d 372, 374 (4th Cir. 1983) (citing *U.S. v. Kubrick*, 444 U.S. 111, 118-25 (1979)).

In its Motion, the Government argues that this court lacks subject matter jurisdiction because Wilder failed to timely exhaust his administrative remedies. (Docket Item No. 17, Memorandum in Support Of The United States' Motion For Summary Judgment, ("Government's Brief"), at 1.) Thus, the Government contends that Wilder is barred from proceeding with his claims. (Government's Brief at 1-4.) Conversely, Wilder argues that he attempted to timely exhaust his administrative remedies. He asserts that Sexual Assault Claim #1 was filed less than three months after the alleged assault, when Jones, a patient representative at VAMC, assured him that the claim would be forwarded to the VA office in Washington, D.C. (Docket Item No. 1), ("Complaint"). Similarly, Wilder argues that he completed the Sexual Assault Claim #2 form in Webb's office. (Complaint.) He alleges that Webb stated she would "get [the claim] to the proper court." (Complaint.) Thus, Wilder argues that there should be no issue as to the timeliness of his claims, because he asserts that he "did everything that the VA instructed [him] to do." (Complaint.)

As mentioned above, Wilder argues that he completed the form for Sexual Assault Claim #1 on November 5, 1990, and presented it to a patient representative

named Jones. (Wilder Deposition 15-16.) In that complaint form, Wilder alleged that he was sexually assaulted by an employee of VAMC in August of 1990. (Sexual Assault Claim #1.) A review of Wilder's medical records shows that he underwent an upper gastric exam on August 2, 1990, and a barium enema procedure on August 7, 1990. (Docket Item No. 17, Attachment 1.) According to Wilder, he was assaulted after being sedated, while awaiting a colonoscopy procedure to be performed. (Sexual Assault Claim #1.) However, the records do not indicate that a colonoscopy was performed on Wilder in August of 1990. (Docket Item No. 17, Attachment 1.)

Barnett, a VA staff attorney who investigated Wilder's claims, stated that his investigation revealed that there was no record of the November 5, 1990, claim, i.e., Sexual Assault Claim #1, ever being received by a VA facility. (Barnett Declaration at 1.) In addition, although Wilder claimed to have submitted the complaint form to Jones in November 1990, Webb indicated that she has been the patient representative at VAMC since 1989. (Docket Item No. 17, Attachment 15), ("Webb Interview").

The Government contends that Wilder has failed to prove that he actually filed Sexual Assault Claim #1 with the VA prior to March 31, 2003. The Government argues that the fact that Wilder attached a copy of the complaint form to his Complaint with this court does not prove that the form was properly presented to the VA. (Government's Brief at 6.) Nevertheless, a dispute in fact exists. In his Complaint, Wilder alleges that he filed Sexual Assault Claim #1 less than three months after the alleged assault. (Complaint.) Moreover, in his deposition, Wilder stated that he completed the appropriate complaint form on November 5, 1990, and presented it to

a patient representative named Jones. (Wilder Deposition at 15-16.) In contrast, the Government offered evidence from a VA staff attorney who claimed that there was no record that Sexual Assault Claim #1 had ever been received by the VA. (Barnett Declaration at 1.) Additionally, Wilder claimed that, in November 1990, a patient representative named Jones informed him that he would forward the claim to Washington, D.C. (Wilder Deposition 15-16.) However, Webb indicated that she had served as VAMC's patient representative since 1989. (Webb Interview.)

In viewing the facts in the light most favorable to Wilder, it is obvious that a dispute in fact exists as to whether or not Wilder actually filed Sexual Assault Claim #1. Therefore, because a genuine issue exists as to a material fact, I recommend that the Government's Motion be denied as to the timeliness of Sexual Assault Claim #1. *See* FED. R. CIV. P. 56(c).

Although there is conflicting evidence as to whether Wilder properly presented Sexual Assault Claim #1 to the VA, there is evidence to show that he filed two other administrative claims. The first complaint form that was filed was dated February 14, 1992. (Back Injury Claim.) In that complaint form, Wilder alleged that, on September 12, 1990, while undergoing a barium enema procedure, his back was injured as he was lifted and turned on the examining table. (Back Injury Claim.) Medical records from VAMC indicated that, on September 12, 1990, Wilder underwent a flexible sigmoidoscopy. (Docket Item No. 17, Attachment 5), ("Operation Report"). The operation report indicated that a barium enema was administered, but there was no notation regarding any discomfort or pain experienced

by Wilder. (Operation Report.) This particular claim was investigated by the VA, and Wilder was notified of the VA's decision to deny his claim on August 13, 1992, and on January 4, 1993. (Barnett Declaration 1-2.)

Shortly after receiving notice of the VA's decision to deny his February 14, 1992 claim, Wilder contacted Webb at VAMC on four occasions during October of 1992. (Patient Representative' Records.) Wilder alleged that Stanley Rawles had sexually assaulted him on two separate occasions. (Patient Representative's Records.) Based on the VAMC's records, these reports represented the first time that Wilder had notified the VAMC of any claims of sexual assault.[4] Thus, based upon these allegations reported by Wilder, Webb forwarded a copy of a complaint form to him at his request on October 20, 1992. (Patient Representative's Records.) On February 8, 1993, Wilder presented the complaint form to Webb. In the complaint form, Wilder alleged that he had been sexually harassed by a male attendant in the x-ray department who touch his "groin area," and stated that he was instructed by the doctor to "check [Wilder] out." (Sexual Assault Claim #2.) Wilder alleged that this incident occurred while he was being treated for a back condition. (Sexual Assault Claim #2.)

In a letter dated June 18, 2004, the VA notified Wilder that his 1990 and 1992 claims of sexual assault were denied. (VA letter.) The VA explained that its review did not "reveal the existence of a negligent or wrongful act on the part of an employee

---

[4] The reports made in October 1992 were the first time Stanley Rawles had been accused of sexual harassment and/or assault by Wilder. However, prior to the reports of sexual misconduct made by Wilder in October 1992, Rawles was named by Wilder as the VAMC employee responsible for his back injury. (Back Injury Claim.)

-13-

of the [VA] acting within the scope of his or her employment." (VA letter.) Moreover, the VA ruled that Wilder's claims were barred because he had failed to present the claims to the VA within two years of the accrual of the injuries. (VA letter.)

Assuming that Wilder was sexually assaulted, he would have immediately realized the existence and cause of his injury. Thus, his injuries would have effectively accrued at that point. *See Gilbert*, 720 F.2d at 374. As stated earlier, Wilder explained that the alleged back injury described in the complaint form dated February 14, 1992, (Back Injury Claim), and the alleged sexual assault described in the complaint form dated February 8, 1993, (Sexual Assault Claim #2), occurred on the same date. (Wilder Deposition at 57-58.) The Back Injury Claim form and medical records show that Wilder was treated at VAMC on September 12, 1990. (Operation Report.) Therefore, since his alleged injuries would have accrued on that date, Wilder should have presented his claim to the VA by September 12, 1992.

The Act "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. U. S.*, 508 U.S. 106, 113 (1993). Timely exhausting one's administrative remedies is a jurisdictional requirement that cannot be waived; thus, when a claimant fails to do so, this court is required to dismiss the action. *See McNeil*, 508 U.S. at 113; *see also Plyler v. U. S.*, 900 F.2d 41, 42 (4th Cir. 1990). Since the complaint form for Sexual Assault Claim #2 was dated February 8, 1993, it is readily apparent that Wilder failed to present his claim to the VA by September 12, 1992. Based upon the facts presented, there is no dispute as to whether

-14-

Sexual Assault Claim #2 was timely filed. Therefore, I conclude that Wilder failed to timely exhaust his administrative remedies as to Sexual Assault Claim #2, and recommend that the Government's Motion be granted as to the timeliness of Sexual Assault Claim #2.

With regard to Sexual Assault Claim #1, I will next consider the Government's argument that summary judgment should be entered in its favor because the conduct alleged did not occur while Rawles was acting within the scope of his employment. Under the Federal Tort Claims Act, sovereign immunity is waived as to the Government for "money damages . . . for injury . . . or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his . . . employment." 28 U.S.C.A. § 1346(b)(1) (West 2003 & Supp. 2006). Thus, because this claim is against the Government, the Government is viewed as a private individual who is subject to the laws of the place where the alleged injuries occurred. *See* 28 U.S.C.A. § 1346(b)(1) (West 2003 & Supp. 2006). In this case, the alleged injuries occurred in Tennessee; therefore, in order to determine whether or not the alleged conduct by Rawles was within the scope of his employment, we must examine Tennessee's substantive law as it pertains to the employer-employee relationship. *See Matthews*, 825 F.2d at 36.

The Government argues that, based upon Tennessee's law of respondeat superior, even if the alleged actions are true, they are outside the scope of Rawles's employment with VAMC. In Tennessee, the doctrine of respondeat superior renders an employer vicariously liable for the "torts committed by his or her employees while

-15-

performing duties within the scope of employment." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000); *see also Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). In order for an act to fall within the scope of employment, it must be done in furtherance of the employer's business or in the performance or execution of duties required by the employee, and it must be connected with the employer's mission, with the act being necessary to accomplish the purpose of the employment and intended for that purpose. *See Sandlin v. Komisar*, 93 S.W.2d 645, 647 (Tenn. Ct. App. 1935). Although the question of whether an employee is acting within the scope of his employment is ordinarily considered a jury question, when the acts are clearly beyond the employee's authority, it can be reviewed as a question of law. *See Reynolds v. Knowles*, 206 S.W.2d 375, 377 (Tenn. 1947); *see also Home Stores, Inc. v. Parker*, 166 S.W.2d 619, 622 (Tenn. 1942); *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937.

In determining whether an employee's conduct is within the scope of his or her employment, Tennessee lower courts have relied upon the Second Restatement of Agency. *See Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937-38; *see also Bowers v. Potts*, 617 S.W.2d 149, 153-54 (Tenn. Ct. App. 1981). These courts have explained that the conduct of an employee is within the scope of employment

> if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 938 (citing RESTATEMENT (SECOND) OF AGENCY § 228 (1957)). In *Tenn. Farmers Mut. Ins. Co.*, in addition to several other factors, the court took into consideration "whether or not the act is seriously criminal" in determining whether or not the conduct, whether authorized or not, was "so similar to or incidental to the conduct authorized as to be within the scope of employment." 840 S.W.2d at 938 (citing RESTATEMENT (SECOND) OF AGENCY § 229 (1957)).

The Supreme Court of Tennessee has not specifically addressed whether or not sexual assault and/or harassment is within the scope of employment when an employer is sued by a third party for the acts of an employee. When, as here, a federal court is to apply the substantive law of a particular state, and that state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *See Moorehead v. State Farm Fire & Cas. Co.*, 123 F. Supp. 2d 1004, 1006 (W.D. Va. 2000); *see also Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994). Thus, it is the duty of this court to determine how the Supreme Court of Tennessee would rule on this issue.

Although Tennessee's highest court has not addressed this precise issue, it has clearly held that a master will not be held liable for the acts of his servant when those acts are beyond the scope of employment and not in the furtherance of the master's business or enterprise. *See Goff v. St. Bernard Coal Co.*, 129 S.W.2d 205, 206 (Tenn. 1939). Moreover, where a servant or employee deviates from his or her duties, and engages in a mission or task on his own, the employer cannot be held liable under the doctrine of respondeat superior. *See Standard Tire & Battery Co. v. Sherrill*, 95

-17-

S.W.2d 915, 916 (Tenn. 1936). In general, an employer is free of liability for torts or willful acts committed by an employee without the employer's authority. Specifically, an employer will not be liable for his employee's willful acts when the employee steps aside from his employer's business and commits an act wholly independent and foreign to his scope of employment. *See Averill v. Luttrell*, 311 S.W.2d 812, 814 (Tenn. Ct. App. 1957).

In discussing the doctrine of respondeat superior, Justice Daughtrey of the Supreme Court of Tennessee noted that, "most jurisdictions, including Tennessee, have held that an employer is not liable to third persons for injuries resulting from the criminal acts of an employee, because such acts are ordinarily outside the scope of employment." *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 185 n.1 (Tn. 1992) (Daughtrey, J., dissenting). Furthermore, many jurisdictions have concluded that sexual misconduct is a criminal act that falls outside the scope of employment. *See Graham v. McGrath*, 363 F. Supp. 2d 1030, 1034 (S.D. Ill. 2005) (Illinois courts have consistently ruled that sexual misconduct of employees is outside the scope of employment; thus, relieving the employer of liability under respondeat superior.); *Dodge v. U. S.*, 162 F. Supp. 2d 873, 884-85 (S.D. Ohio 2001) (Ohio courts have consistently ruled that sexual assaults are not within the scope of employment.); *Piedmont Hosp., Inc. v. Palladino,* 580 S.E.2d 215, 217 (Ga. 2003) (Georgia courts have held that "an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment.").

However, some jurisdictions have held that certain criminal or tortious acts may be deemed within the scope of employment. *See M.J. Uline Co. v. Cashdan*, 171 F.2d 132, 133-34 (D.C. Cir. 1948) (a hockey player was considered to be advancing the interests of his employer despite committing an assault during the game); *Neary v. Hertz Corp.*, 231 F. Supp. 480, 484 (D.D.C. 1964) (an assault by an employee-motorist on another motorist during an automobile accident which occurred while carrying out the business of the employer was held to be within the scope of employment). Nevertheless, if an employee commits a crime acting solely for his own benefit, the employer is not liable. *See Melton v. U. S.*, 488 F. Supp. 1066, 1074 (D.D.C. 1980). Thus, when attempting to examine whether or not an act is done within the scope of employment, it is imperative to determine whether the employee engaged in actions to benefit himself or his employer.

In the case at hand, Rawles allegedly sexually assaulted and harassed a patient at VAMC. According to Wilder, the alleged acts occurred while Rawles was carrying out his employment for VAMC. Rawles's alleged sexual misconduct did not further VAMC's business, was not done at the direction of his supervisors at VAMC and was not connected with the VAMC mission or performance of a VAMC service. *See Sandlin*, 93 S.W.2d at 647. Moreover, it is clear that Rawles was not employed to sexually assault or harass VAMC patients and that his actions were carried out solely for his benefit. These alleged actions did not serve his employer and were not in furtherance of the employer's enterprise, as the actions were "clearly beyond [Rawles's ] authority." *Home Stores, Inc.*, 166 S.W.2d at 622. Rawles's actions constituted a deviation from his work and resulted in him "engag[ing] in a mission on his own." *Standard Tire & Battery Co.*, 95 S.W.2d at 916. Here, Rawles's alleged conduct was

-19-

"wholly independent" of his scope of employment. *Averill*, 311 S.W.2d at 814. Thus, since these alleged acts were criminal in nature and clearly not in furtherance of VAMC's business, I conclude that there is no genuine issue of material fact that Rawles' was acting beyond the scope of his employment.

Based upon existing Tennessee law regarding the doctrine of respondeat superior, in addition to law from other jurisdictions, I am of the opinion that the Supreme Court of Tennessee would likely determine that sexual assault and/or harassment committed by an employee upon a third party falls outside the scope of employment. Accordingly, I recommend that the Government's Motion be granted.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  A genuine issue as to a material fact exists regarding whether Wilder presented Sexual Assault Claim #1 complaint form to the VA;

2.  According to Wilder's own statements, the alleged sexual assault described in the complaint form dated February 8, 1993, and the alleged back injury described in the complaint form dated February 14, 1992, both occurred on September 12, 1990;

3.  Wilder's alleged injuries accrued on September 12, 1990. Thus, in order to comply with 28 U.S.C. § 2401(b), Sexual Assault Claim #2 complaint form should have been filed by September 12, 1992;

4.  Wilder's complaint was allegedly filed February 8, 1993; more than two years from the date of the accrual of his alleged injuries. Thus, based on his own allegations, it was not timely filed;

-20-

5. There is no genuine issue of material fact regarding whether or not Wilder timely exhausted his administrative remedies as to Sexual Assault Claim #2;

6. The VAMC employee's alleged acts were not of the type that the employee was employed to perform, nor were the alleged acts carried out in furtherance of VAMC's business; and

7. The alleged actions of the VAMC employee were not within the scope of his employment.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the defendant's motion for summary judgment.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of

Case 1:04-cv-00141-JPJ-PMS   Document 26   Filed 01/23/07   Page 21 of 22   Pageid#: 180

the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is also directed to send copies of this Report and Recommendation to all counsel of record.

DATED:     January 23, 2007.


/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE